# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-2483

SUSANNA PETTY,

    Plaintiff,

v.

REMYS GARCIA ALBINO and
WILLIAM CARR,

    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Susanna Petty, through her attorneys at the Civil Rights Litigation Group, brings this Complaint and Jury Demand, and alleges:

### INTRODUCTION

1. Ms. Petty brings this civil rights action against Ford County Deputy Sheriff Remys Garcia Albino, who sexually assaulted her while transporting her as a pretrial detainee from Kansas to Colorado. She also sues Ford County Sheriff William Carr for maintaining policies and practices that permitted and enabled this assault.

2. Defendant Garcia Albino violated Ms. Petty's constitutional rights to bodily integrity and freedom from sexual assault by a state actor. Exploiting his complete control over Ms. Petty during the transport, he stopped his van on a remote road in Bent County, Colorado, and sexually assaulted her. Abusing his unsupervised power, he exposed himself to her, forced her hand onto his genitals, and made her perform manual stimulation until he ejaculated. Through these acts, Defendant Garcia Albino inflicted severe and lasting emotional distress on Ms. Petty.

1

3. Ms. Petty was isolated and defenseless during the transport, completely subject to Defendant Garcia Albino's control and desires. This vulnerability resulted directly from Sheriff Carr's decision not to implement reasonable constitutional safeguards based on known concerns about inmate vulnerability to sexual assaults, reasonable model policies designed to prevent it, and the Prison Rape Elimination Act. Despite knowing the risks inherent in solo, cross-gender transport of detainees—particularly interstate transports lasting hours without supervision—Sheriff Carr maintained dangerous and unreasonable policies and practices that created opportunities for and greatly increased the risk of this assault. He decided not to (a) require partner transports, (b) require deputies to wear body-worn cameras to record all physical interactions with transportees, (c) equip vehicles with recording devices, (d) institute or enforce policies requiring updates during transportations, and (e) implement other meaningful deterrents to foreseeable officer misconduct during these extended periods of unsupervised control over vulnerable detainees.

4. Through this action, Ms. Petty seeks to hold Defendants accountable for violating her constitutional right to bodily integrity, violating her right to be free of cruel and unusual punishment, and for the extreme, outrageous conduct that foreseeably caused her severe emotional distress. She further seeks to hold Sheriff Carr and Ford County liable for the conduct of its deputy's official acts and for maintaining policies and practices that created the conditions empowering Deputy Garcia Albino's assault. Defendants' willful and wanton conduct and deliberate indifference violated Ms. Petty's constitutional and other legal rights, and caused her severe emotional trauma, economic losses, and dignitary harm. Beyond compensatory damages for these injuries, Ms. Petty seeks punitive damages against Deputy Garcia Albino to punish his abuse of state authority and to deter similar constitutional violations.

## JURISDICTION AND VENUE

5. Plaintiff brings her federal claims under 42 U.S.C. § 1983 for violations of the United States Constitution.

6. Plaintiff brings state law claims under Colorado common law for extreme and outrageous conduct and under Kan. Stat. Ann. §§ 19-805 and 19-811 for sheriff liability.

7. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

8. This Court has diversity jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332, as Plaintiff is a citizen of Colorado, Defendants are citizens of Kansas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because these claims arise from the same occurrence as Plaintiff's federal constitutional claims—Deputy Garcia Albino's assault during the December 6, 2023, transport.

10. The Kansas statutory claims against Sheriff Carr derive from the same nucleus of operative facts as the federal constitutional claims, specifically Sheriff Carr's promulgation of policies that deliberately and unreasonably empowered Deputy Garcia Albino to sexually assault Ms. Petty instead of model policies that would have prevented it during the December 6, 2023, transport. Resolution of both federal and state claims requires examination of identical evidence regarding Sheriff Carr's supervisory policies and their causal relationship with Ms. Petty's injuries.

11. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2) because Deputy Garcia Albino sexually assaulted Ms. Petty in Bent County, Colorado.

12. Plaintiff may recover attorney fees and costs under 42 U.S.C. § 1988.

13. The constitutional violations giving rise to this action occurred entirely within Bent

County, Colorado, where Deputy Garcia Albino stopped the transport vehicle and sexually assaulted Ms. Petty. No substantial part of the events giving rise to Plaintiff's claims occurred in Kansas, as the assault and resulting injuries occurred exclusively in Colorado.

## PARTIES

14. Plaintiff incorporates all preceding allegations.

15. Plaintiff Susanna Petty is a citizen of Colorado.

16. At all relevant times, Defendant Remys Garcia Albino was a Ford County Sheriff's Deputy acting under color of Kansas law. He is sued in his individual capacity.

17. At all relevant times, Defendant William Carr served as Sheriff of Ford County, Kansas, with supervisory authority over all deputies, jailers, and detention staff. He is sued in his supervisory and official capacities.

## FACTUAL ALLEGATIONS

18. Plaintiff incorporates all preceding allegations.

### *Defendants' Responsibility for Ms. Petty*

19. On December 6, 2023, Plaintiff Susanna Petty was a pretrial detainee of the Ford County Jail in Kansas.

20. Ms. Petty awaited extradition to Colorado under the Interstate Agreement on Detainers.

21. The Ford County Sheriff's Office operates the Ford County Jail.

22. Among the Ford County Sheriff's Office's legal duties is to take reasonable steps to keep detainees safe and secure from unwarranted physical assaults by deputies who work for Ford County Sheriff's Office.

23. Among the Ford County Sheriff's Office's legal duties is to take reasonable steps

4

to keep detainees safe from sexual assaults by deputies who work for Ford County Sheriff's Office.

24. Defendant Garcia Albino was a Ford County Sheriff's Deputy on December 6, 2023.

25. Defendant Garcia Albino acted under color of Kansas law throughout these events.

26. On December 6, 2023, Defendant Garcia Albino transported Ms. Petty from Kansas to Colorado.

27. Defendant Garcia Albino's destination was the Bent County Sheriff's Office in Colorado.

28. Defendant Garcia Albino exercised complete custody and control of Ms. Petty during the interstate transport.

29. In transporting Ms. Petty, Defendant Garcia Albino performed official acts for the Ford County Sheriff's Office.

30. Defendant Garcia Albino was on duty throughout the transport.

31. Defendant Garcia Albino wore his official uniform throughout the transport.

32. Defendant Garcia Albino kept Ms. Petty in restraints.

33. The Ford County Sheriff's Office did not install a video or audio recording device in the vehicle used for the transport that could have recorded or could have been used to remotely surveil the events that occurred during the transport.

34. The Ford County Sheriff's Office did not require Defendant Garcia Albino to wear a body-worn camera during the transport that could have recorded events that occurred during the transport.

35. No other Ford County Sheriff's deputy accompanied Defendant Garcia Albino during the interstate transport; nor did Defendant Sheriff Carr require one to accompany him.

36. Upon receiving the request to transfer Ms. Petty, Defendant Sheriff Carr was responsible for assigning deputies to complete the task and approving the means and method of accomplishing the official acts designated to Defendant Deputy Albino.

37. Sheriff Carr deliberately chose Defendant Deputy Albino to complete the transport, and approved of the planned solo deputy, cross-gender transport without reasonable supervisory safeguards to ensure Ms. Petty's safety or security.

38. Ms. Petty was alone with Defendant Garcia Albino during this solo deputy, cross-gender transport.

39. The transport from Ford County to Bent County covered nearly two hundred miles and required more than three hours of driving across state lines.

### *Defendant Garcia Albino Sexually Assaults Ms. Petty*

40. After crossing into Colorado, Defendant Garcia Albino stopped the transport van on a roadside near the Bent County Sheriff's Office.

41. The Ford County Sheriff's Office did not reasonably enforce any policy that may have required Defendant Garcia Albino to notify dispatch when he stopped, explain why he stopped where he stopped, or create a record of the locations where he stopped or why he stopped there.

42. Defendant Garcia Albino stopped without notifying dispatch or creating any record.

43. Defendant Garcia Albino stopped without informing dispatch about his reason for stopping so close to the Bent County Sheriff's Office.

44. Defendant Garcia Albino stopped without informing dispatch about his reason for stopping at the isolated location where he stopped.

45. There, Defendant Garcia Albino sexually assaulted Ms. Petty.

6

46. Defendant Garcia Albino exited his vehicle, approached Ms. Petty in the rear compartment, exposed himself, forced her hand onto his genitals, and made her perform manual stimulation until completion.

47. Defendant Garcia Albino would not have sexually assaulted Ms. Petty on December 6, 2023, had Ford County Sheriff's Office, led by Defendant Sheriff Carr, implemented and enforced any of the following reasonable policies and practices on December 6, 2023:

   a. Require all cross-gender interstate detainee transports to be completed by two deputies;

   b. Require all the activities of cross-gender interstate detainee transports to be video recorded;

   c. Require all the physical interactions between the transporting deputies and the detainees during cross-gender interstate detainee transports to be video recorded by devices installed inside the vehicles used for the transports;

   d. Require all the physical interactions between the transporting deputies and the detainees during cross-gender interstate detainee transports to be video recorded by body-worn cameras worn by the transporting deputies; or

   e. Require all deputies transporting detainees during cross-gender interstate detainee transports to contact dispatch to explain their reason for each stop and their reason for choosing the location of each stop.

48. The transport van lacked interior recording equipment.

49. Defendant Garcia Albino wore no body camera.

50. Defendant Garcia Albino acted with knowledge that no recording system existed to document his conduct.

51. Defendant Garcia Albino transported Ms. Petty while she remained restrained and completely dependent on him for basic needs.

52. Sexual assault by a law enforcement officer is extreme and outrageous conduct intended to cause severe emotional distress.

53. Sexual assault by a law enforcement officer against a detainee violates the criminal codes of both Kansas and Colorado.

54. As a law enforcement officer, Defendant Garcia Albino knew that he was violating the law and violating Ms. Petty's constitutional rights when he sexually assaulted her.

### *The Effects of Defendant Garcia Albino Sexually Assaulting Ms. Petty*

55. The sexual assault, foreseeably, caused Ms. Petty severe and ongoing psychological trauma, manifesting in post-traumatic stress disorder, depression, persistent fear, and profound humiliation, loss of peace of mind, and loss of mental wellbeing.

56. Ms. Petty experienced severe immediate psychological trauma during the assault, including acute humiliation, stress response, and terror.

57. Ms. Petty will continue to experience diminished peace of mind, mental wellbeing, and quality of life as a direct result of the sexual assault.

58. After arriving at the Bent County Sheriff's Office, Ms. Petty experienced acute psychological distress and legitimate fear of institutional disbelief and potential re-victimization.

59. A Weld County Sheriff's Office deputy transported Ms. Petty from Bent County Sheriff's Office to Weld County Sheriff's Office on December 6, 2023.

60. Upon her arrival at Weld County Sheriff's Office, Ms. Petty immediately reported the sexual assault to a female deputy in Weld County, Colorado.

61. Weld County Sheriff's Office Issued Case Number 23W007787 to Ms. Petty's

matter on December 6, 2023.

62. On July 8, 2025, Defendant Garcia Albino confessed to sexually assaulting Ms. Petty during an interview with Bent County Sheriff's Sergeant Palacios.

63. Following Garcia Albino's confession, Sergeant Palacios obtained an arrest warrant charging him with unlawful sexual conduct by a peace officer under Colo. Rev. Stat. §§ 18-3-405.7(2)(a) and (b).

64. Ms. Petty continues to experience severe anxiety and fear regarding future interactions with correctional officers, particularly during anticipated incarceration.

65. Ms. Petty receives ongoing psychological treatment for trauma resulting from the sexual assault.

### *Defendant Carr's Responsibilities as Sheriff*

66. At all relevant times, Defendant Carr served as Sheriff of Ford County, Kansas.

67. Defendant Carr bore ultimate responsibility for all detainees in Ford County custody.

68. As Sheriff, Defendant Carr possessed authority to implement policies, procedures, practices, technologies, tools, and training programs addressing sexual misconduct by correctional staff.

69. Sheriff Carr authorized solo deputy transport of detainees, including cross-gender transports.

70. Sheriff Carr knew that law enforcement standards nationwide discourage solo deputy, cross-gender detainee transports due to the heightened risk of sexual misconduct.

71. Sheriff Carr understood that the power dynamic between armed male officers and restrained female detainees creates extreme vulnerability to abuse, particularly during extended

9

periods of isolation.

72. Despite having this knowledge, Sheriff Carr chose to promulgate policies permitting such transports without any compensating safety measures.

73. Sheriff Carr failed to require recording equipment during detainee interactions or transports.

74. Sheriff Carr authorized solo deputy, cross-gender detainee transports.

75. Solo deputy, cross-gender transports were not isolated occurrences but represented standard operating procedure under Sheriff Carr's administration.

76. Ford County deputies conducted numerous solo deputy, cross-gender transports with Defendant Sheriff Carr's authorization, with female detainees routinely transported by lone male officers for hours without supervision or accountability measures.

77. Sheriff Carr was aware of the frequency and routine nature of these vulnerable transports.

78. Sheriff Carr required no training or supervision regarding solo deputy, cross-gender or extended-duration transports to ensure that officers did not violate detainees' rights.

79. Sheriff Carr promulgated a practice of permitting unreported stops during transport so long as detainees did not enter facilities.

80. Sheriff Carr required no documentation of transport stops unless detainees entered facilities.

81. Sheriff Carr promulgated a practice of unsupervised and unrecorded officer transport of and interaction with detainees.

82. Sheriff Carr provided no recording equipment for transport vehicles.

83. Sheriff Carr provided no body-worn cameras to correctional staff.

10

84. Sheriff Carr possessed both the budgetary authority and available personnel to require two-officer transports for cross-gender or long-distance interstate transports.

85. Sheriff Carr was aware of the availability of federal and organizational funding that has incentivized and subsidized the purchase of cameras.

86. Sheriff Carr was aware of nationwide research studies finding that cameras decrease the number of civil rights complaints and violations by officers.

87. Sheriff Carr was aware of the obvious oversight function that body-worn and in-vehicle cameras serve.

88. Further, the Ford County Sheriff's Office employed sufficient deputies to implement partner transport protocols without compromising other law enforcement functions.

89. Sheriff Carr prioritized other deployments over detainee safety by maintaining solo deputy transport policies despite having the resources to implement safer alternatives.

90. Sheriff Carr knew that pretrial detainees like Ms. Petty maintain stronger constitutional protection than convicted prisoners and have not been adjudicated guilty of any crime.

91. Sheriff Carr understood that transporting restrained female detainees through remote areas of Colorado for over three hours with no documentation requirements, no recording equipment, and no supervision created an extreme and obvious risk of constitutional violations.

92. The combination of these factors—cross-gender dynamics, complete isolation, absence of accountability measures, and extended duration—created risks so obvious that Sheriff Carr's failure to address them demonstrates conscious disregard for detainee safety.

93. Sheriff Carr authorized Garcia Albino to transport Ms. Petty solo despite knowing the transport would occur without oversight or accountability measures.

94. Sheriff Carr knew that his deputies regularly transported detainees to Colorado and that his policies governing such transports would have direct effects in Colorado.

95. Sheriff Carr specifically authorized this interstate transport knowing it would subject Ms. Petty to his department's inadequate supervision policies while in Colorado.

96. Sheriff Carr maintains transport agreements with multiple Colorado law enforcement agencies, including Bent County, requiring regular transport of detainees to Colorado facilities.

97. Sheriff Carr personally reviews and approves interstate transport assignments, including the specific assignment of Deputy Garcia Albino to transport Ms. Petty to Colorado.

98. Between 2020 and 2023, Sheriff Carr authorized numerous transports of detainees to Colorado facilities.

99. Sheriff Carr regularly communicates with Colorado law enforcement officials regarding detainee transports and has entered into reciprocal agreements for prisoner transport between Kansas and Colorado.

100. Sheriff Carr knew that his policies governing deputy conduct during transports would govern his deputies' actions within Colorado's borders and that any constitutional violations resulting from inadequate policies would cause injury to detainees within Colorado.

101. Sheriff Carr knew that female detainees transported to Colorado facilities would be particularly vulnerable during extended solo transports through remote Colorado territories.

102. Despite knowing that at least a third of the three-hour transport to Bent County would occur within Colorado's borders, Sheriff Carr implemented no special safeguards for interstate transports and applied the same inadequate supervision policies to Colorado transports as to local Kansas transports.

103. Although Sheriff Carr knew his deputies would exercise custodial authority over detainees within Colorado for extended periods, he failed to coordinate with Colorado law enforcement to ensure accountability during transports within Colorado or to implement any Colorado-specific safety protocols.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourteenth Amendment to the United States Constitution**
*Cruel & Unusual Punishment, Violation of Bodily Integrity*
**(Defendant Garcia Albino)**

104. Plaintiff incorporates all preceding allegations.

105. Pretrial detainees possess a Fourteenth Amendment right to bodily integrity and protection from sexual assault by state actors.

106. On December 6, 2023, Defendant Garcia Albino sexually assaulted Ms. Petty during the transport in Bent County, Colorado.

107. Defendant Garcia Albino confessed to the sexual assault during his July 2025 interview with law enforcement.

108. Defendant Garcia Albino's sexual assault of a detainee in custody violated clearly established constitutional law.

109. Defendant Garcia Albino's conduct violated Ms. Petty's Fourteenth Amendment right to bodily integrity.

110. Defendant Garcia Albino's sexual assault directly caused Ms. Petty's damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourteenth Amendment to the United States Constitution**
*Monell – Failure to Train or Supervise*
**(Defendant Carr)**

111. Plaintiff incorporates all preceding allegations.

112. As Sheriff, Defendant Carr possessed authority to implement policies, procedures,

13

practices, technologies, tools, and training programs addressing sexual misconduct by correctional staff.

113. Sheriff Carr knew that law enforcement standards nationwide discourage solo cross-gender detainee transports due to the heightened risk of sexual misconduct.

114. Sheriff Carr understood that the power dynamic between armed male officers and restrained female detainees creates extreme vulnerability to abuse, particularly during extended periods of isolation.

115. Despite this knowledge, Sheriff Carr chose to maintain policies permitting such transports without any compensating safety measures.

116. At the time of the assault, Sheriff Carr had failed to implement policies prohibiting solo cross-gender transports or requiring recording equipment during detainee transportation.

117. Sheriff Carr maintained a practice of solo detainee transports without supervision.

118. Sheriff Carr maintained a practice of permitting male officers to conduct solo transports of female detainees.

119. Sheriff Carr provided no training or supervision regarding cross-gender or extended-duration transports.

120. Despite understanding the value and possessing the means and tools necessary to purchase or otherwise procure in-vehicle and body-worn cameras, Sheriff Carr failed to provide, implement, and require recording equipment or accountability measures for detainee transports.

121. Sheriff Carr also required no documentation of isolated roadside stops during detainee transports.

122. Sheriff Carr maintained a practice of unsupervised solo deputy, cross-gender detainee transports lasting multiple hours.

123. Sheriff Carr's deliberate indifference to the risks created by unsupervised solo deputy transports proximately caused Ms. Petty's constitutional injury.

## THIRD CLAIM FOR RELIEF
### Colorado Common Law
*Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress*
**(Defendant Garcia Albino)**

124. Plaintiff incorporates all preceding allegations.

125. Defendant Garcia Albino engaged in extreme and outrageous conduct by sexually assaulting Ms. Petty while she remained under his custodial control during interstate transport.

126. Sexual assault by a law enforcement officer against a detainee in custody exceeds all bounds of civilized society.

127. Sexual assault by a law enforcement officer against a detainee in custody violates the criminal codes of both Colorado and Kansas.

128. The sexual assault inherently demonstrates intent to cause severe emotional distress.

129. Defendant Garcia Albino's career as a law enforcement officer and corresponding knowledge of criminal violations also demonstrates his inherent intent to cause severe emotional distress.

130. The sexual assault caused Ms. Petty severe and ongoing emotional distress, including post-traumatic stress disorder, depression, persistent anxiety, loss of peace of mind and loss of mental wellbeing.

131. Ms. Petty requires ongoing treatment for trauma resulting from the sexual assault.

132. The sexual assault directly caused Ms. Petty's severe emotional distress and economic damages.

# FOURTH CLAIM FOR RELIEF
## Kan. Stat. Ann. §§ 19-805 & 19-811
### *Responsibility for Deputy's Official Acts*
**(Defendant Carr)**

133. Plaintiff incorporates all preceding allegations.

134. Kansas law holds sheriffs liable for their deputies' official acts. Kan. Stat. Ann. § 19-811.

135. Kansas law specifically holds sheriffs liable for deputies' acts concerning detainees in custody. Kan. Stat. Ann. § 19-805.

136. At all relevant times, Defendant Garcia Albino was performing official acts for the Ford County Sheriff's Office.

137. Defendant Garcia Albino was acting under the color of Kansas state law when he sexually assaulted Ms. Petty.

138. Sheriff Carr bears statutory liability for Deputy Garcia Albino's sexual assault of Ms. Petty under Kansas law.

139. Sheriff Carr's deliberate indifference proximately caused the constitutional violations suffered by Ms. Petty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and award compensatory damages against all Defendants, award punitive damages against Defendant Garcia Albino, charge costs and attorney fees to all Defendants under 42 U.S.C. § 1988.

## PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted this 11th day of August 2025.

*s/ Edward C. Hopkins Jr.*
*s/ Audrey D. Oliver*

16

>Edward C. Hopkins Jr., No. 43298
>Audrey D. Oliver, No. 60885
>Civil Rights Litigation Group
>1543 Champa Street, Suite 400
>Denver, Colorado 80202
>T: (720) 515-6165
>F: (720) 465-1975
>ed@rightslitigation.com
>audrey@rightslitigation.com
>
>*Attorneys for Plaintiff*